[L. A. No. 4857.   Department Two.—January 15, 1917.]

## In the Matter of the Estate of HELEN McCOMBS, Deceased.

ADOPTION—NEW YORK STATUTE OF 1884—INSUFFICIENT EVIDENCE OF ADOPTION.—The adoption of a minor child in conformity with the act of the state of New York of May 31, 1884, authorizing the adoption of children in the custody of charitable corporations by a formal written instrument of adoption, sealed, executed, and signed by the corporation and the adopting person in the manner specified in such act, cannot be established by mere evidence of an entry in the register of the corporation that the child had been "adopted," nor by proof of declarations that certain lost papers were "adoption" papers, nor without proof that the child was placed in the institution under such circumstances as gave the officers thereof power to enter into a contract for adoption.

ID. — POWER TO ADOPT IS STATUTORY — INHERITANCE FROM ADOPTING PARENT—STRICT PROOF OF COMPLIANCE WITH STATUTE.—The power to adopt children is a creation of statute, and was unknown to the common law. The mode is the measure of the power, and to establish the child's right to inherit from the person claimed as an adopting parent, there must be proof of an act of adoption done in strict accordance with the statute.

ID.—BURDEN OF PROOF TO ESTABLISH STATUS AS ADOPTED CHILD—LIVING WITH TESTATRIX AS A CHILD.—In a contest by one seeking to establish as against the legatees and devisees under a will her own status as an adopted daughter of the testatrix, the burden of proof is upon her to establish her standing as an adopted child. Proof that she had lived with the testatrix and her husband and had been treated as a child is not sufficient.

APPEAL from an order of the Superior Court of Los Angeles County distributing the estate of a deceased person. James C. Rives, Judge.

The facts are stated in the opinion of the court.

James B. Irsfeld, and Harlan G. Palmer, for Appellants.

Earl Rogers, Frank Dominguez, and W. H. Dehm, for Respondent.

MELVIN, J.—Appellant, Helen McCombs Fairchild, opposed distribution of the estate of Helen McCombs, deceased,

upon the theory that said appellant was the adopted daughter of Helen McCombs and a pretermitted heir. The court found that contestant was not the legally adopted daughter of Helen McCombs, and that the omission to provide for Mrs. Fairchild in decedent's will was intentional. She and her assignee, J. B. Irsfeld, have appealed from the decree distributing the estate in accordance with the provisions of the will of Helen McCombs.

The contestant introduced evidence tending to show that while she was an infant she was an inmate of and entered upon the books of the Jefferson County Orphan Asylum of Watertown, New York, as a child placed there by "charity"; that George W. McCombs and his wife, Helen McCombs, of Argenta, Arkansas, took her from that institution "on trial" on August 8, 1887; and that she went with them to their home and lived with them as their daughter until and for some time after her first marriage. It was shown that Mrs. Helen McCombs had issued cards of invitation to the marriage of "her daughter Helen" to Dell Ingram. There was also testimony to the effect that both Mr. and Mrs. McCombs had on different occasions exhibited documents or a document declared by them to be "Helen's adoption papers," but no person undertook to declare what were the contents of such papers. Contestant herself testified that after the death of George McCombs, while she and her husband were living with his widow, Helen McCombs, the latter showed her some papers which were described by Mrs. McCombs as adoption papers. "She showed us the papers," declared witness, "and told me she was going to tear them up so I couldn't get anything when she died; she tore them up in our face." There was an entry in the records of the orphan asylum immediately following the words, "Taken on trial by George W. McCombs August 8th, 1887," etc., as follows: "Adopted January, 1888." No court record of formal adoption or contract of adoption was proven to exist. The only proved writing by George W. McCombs was that by which he applied to the trustees of the asylum for the custody of the child "with the intention of adoption." It was also shown that the license issued while contestant was a minor, authorizing her marriage to Ingram, bore the notation, "The mother consents." During all the years before her marriage contestant was called "daughter" by Mrs. McCombs and she called the latter

"mother" or "mama." These are the principal facts established by the contestant.

Appellant is of the opinion that by the evidence offered she has established her status as an adopted child, but the question arises whether or not greater proof than she brought forward was necessary to fix the fact of adoption for the purposes of her contest. Under the law of 1884 in force in the state of New York at the time the child was taken from Watertown to Arkansas, any institution of the same kind as that from which she was procured by the McCombs was empowered to assume guardianship of the person of an indigent minor child. This could be accomplished by an instrument signed by the parents or the survivor of them, or in the case of an abandoned child by the mayor of the city or the county judge. ("Chap. 438. An act to revise and consolidate the statutes of the state relating to the custody and care of indigent and pauper children by orphan asylums and other charitable institutions. Passed May 31, 1884.") By this act the institution was given authority to bind out the child by indenture or to place such child out on trial. The law authorized the charitable corporation to place the child by adoption with a suitable person or persons, "by a written instrument of adoption, which shall be executed under seal and signed in the corporate name of such corporation by such officer or officers as shall be authorized by the directors or trustees thereof to sign such corporate name to such instruments, and which shall also be signed by the person or persons with whom such child shall be so placed by adoption, and if either of the persons so taking such child by adoption shall then have a husband or wife from whom such person is not lawfully separated, such instrument of adoption shall also be signed by such husband or wife." There was a further provision that after such adoption the foster parent and the child should sustain toward each other the legal relation of parent and child with all the usual reciprocal rights and duties except the right of inheritance.

It is very clear that no formal adoption under the New York law was proven. Surely the entry in the register of the orphan asylum that the child had been "adopted" was not sufficient to constitute such proof. Nor were the proofs of mere declarations that certain papers were "adoption papers" enough to establish the existence of the solemnly

executed contract contemplated by the statute. Nor was there any proof that the child was placed in the Jefferson County Orphan Asylum under such circumstances as gave the officers of that institution power to enter into a contract for her adoption. To establish the child's right to inherit from the person claimed as an adopting parent, there must be proof of an act of adoption done in strict accordance with the statute. (*Ex parte Clark,* 87 Cal. 638–641, [25 Pac. 967].)

The power to adopt children is a creation of statute, and was unknown to the common law. The mode is the measure of the power. (*Ex parte Chambers,* 80 Cal. 216, [22 Pac. 138].) Therefore proof of strict formal compliance with the requirements of the statute is necessary. (*Matter of Cozza,* 163 Cal. 514, [Ann. Cas. 1914A, 214, 126 Pac. 161].)

Appellant, conceding the force of these and many other authorities to the same effect, insists that there is a distinction between cases where the natural parents are seeking to set aside the supposed adoption and those in which adoptive parents, or those standing in their place, are making an attack upon such proceedings, and in that behalf *Estate of McKeag,* 141 Cal. 403, [99 Am. St. Rep. 80, 74 Pac. 1039], is cited. In that case the attack was made by an heir at law upon the status of the administrator of the estate of a deceased person appointed after nomination of his wife, who was an adopted daughter of the intestate. The petitioner sought to show that certain alleged informalities in the adoption proceedings rendered them null and of no effect, and this department held that as against such collateral attack the adoption was sufficient. It was also held that the appellant was as effectually estopped as the decedent would have been in her lifetime from questioning the validity of the adoption proceedings. But the case at bar is quite different. Here is a contestant seeking to establish as against the legatees and devisees under a will her own status as an adopted daughter. The burden of proof is upon her to convince the court of her standing as an adopted child. Proof that she had lived with the McCombs and had been treated as a child was not sufficient. (*In re Romero,* 75 Cal. 379, 381, [17 Pac. 434]; *In re Huyck's Estate,* 49 Misc. Rep. 391, [99 N. Y. Supp. 502]; *Coombs* v. *Cook,* 35 Okl. 326, [129 Pac. 698]; *Tyler* v. *Reynolds,* 53 Iowa, 147, [4 N. W. 902].)

In *Smith* v. *Allen,* 161 N. Y. 478, [55 N. E. 1056], the appeal was from a judgment construing a will. By a residuary clause all property remaining after the death or marriage of the testator's widow was to go to those who would have been entitled to succeed in the event of his intestacy. One of the claimants asserted rights as an adopted child, and of her claim Mr. Justice Haight, writing the opinion of the court, used the following language: "Mrs. Greene claims to have been the adopted daughter of the testator, and as such to be his sole heir at law and next of kin and entitled to all of the residuary estate. It appears that Mrs. Greene was born in 1851; that she was placed in the Church Charity Foundation in 1856, and was subsequently taken therefrom by Mrs. Allen, the testator's wife. She continued thereafter to live with the testator in his family until her marriage and was treated in every respect as a daughter. The testator in both his will and codicil describes her as his adopted daughter, but it is not claimed that she was ever adopted by any instrument in writing, or that there is any written evidence of an adoption further than an entry in a book kept by the Church Charity Foundation, as follows: 'Sarah Frances was adopted by Captain and Mrs. Allen.' This, we think, is not sufficient to constitute an adoption under the statute of 1873, chapter 830, as amended by the Laws of 1887, chapter 703." Appellant seeks to distinguish this case from the one at bar on the ground that the law of 1884, unlike that of 1873, gave the officers of eleemosynary institutions the right to place children by adoption. But the decision does not depend upon that distinction. It holds that a mere clerical entry of an adoption proves nothing—that there must be some proof of an instrument in accord with the necessary form of the law, executed with due formality by the proper parties. To be sure this case differs from that in that an attempt was made to show that some sort of a document characterized by the testatrix as "adoption papers" was in existence, but the evidence upon that point was not so strong as the reference in Mr. Allen's will to Mrs. Greene as his adopted daughter. The facts in this case were not so much in favor of the contestant as those appearing in the one just cited. Under that authority, and the others which we have discussed and referred to, we are constrained to affirm the decree of the probate court, as it relates

to the conclusion that Mrs. Fairchild was not the adopted child of Helen McCombs. And this makes it unnecessary to discuss the other part of the court's finding that testatrix had Mrs. Fairchild in mind when she omitted to provide for appellant and that such omission was intentional.

The decree is affirmed.

Henshaw, J., and Lorigan, J., concurred.

Hearing in Bank denied.